United States Courts
Southern District of Texas
FILED

APR 25 2018

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. |
| | § | 18CR. 10 |
| MOSES SEEDORF SAID | § | |

# INFORMATION

THE U.S. ATTORNEY CHARGES:

## COUNT ONE
### (Wire Fraud - 18 U.S.C. § 1343)

**A. INTRODUCTION**

At all times relevant to this Information:

1. The Beck Group was an international company doing business in Houston, Texas that worked with developers, institutions, organizations, and corporations to design and build their facilities.

2. Wells Fargo was a financial institution located in Dallas, Texas, and elsewhere.

3. **MOSES SEEDORF SAID** was a resident of Houston, Texas, and was employed by the Beck Group as a construction manager, in Houston, Texas.

**B. THE SCHEME AND ARTIFICE TO DEFRAUD**

4. Beginning in or about 2016, and continuing thereafter through 2017, in the Houston Division of the Southern District of Texas and elsewhere, defendant,

## MOSES SEEDORF SAID,

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the Beck Group, and to obtain money by means of false and fraudulent pretenses, representations and promises, by using his position as the construction manager for the Beck Group:

(1) to cause false invoices to be submitted to the Beck Group; (2) to cause the Beck Group to approve the false invoices; (3) to cause funds to be wire transferred from the bank accounts of the Beck Group to the bank accounts of shell companies owned by his co-conspirators; and (4) to receive payments from his co-conspirators, in furtherance of the fraud scheme.

### C.   MANNER AND MEANS OF THE SCHEME TO DEFRAUD

It was a part of the scheme to defraud that:

5. **MOSES SEEDORF SAID** was hired by the Beck Group as a construction manager in 2016 to oversee the construction of the Le Meridien Hotel located in downtown Houston.

6. As the construction manager for the Le Meridien Hotel, **MOSES SEEDORF SAID** was authorized by the Beck Group to review and approve invoices submitted to the Beck Group for payment by vendors who provided goods or services related to the construction of the Le Meridien Hotel.

2

7. **MOSES SEEDORF SAID** and his co-conspirators created and registered shell companies in the state of Texas. **MOSES SEEDORF SAID** and his co-conspirators prepared and submitted documents to the Beck Group to become vendors with the Beck Group. **MOSES SEEDORF SAID** and his co-conspirators opened bank accounts to receive payments from the Beck Group as vendors to the Beck Group.

8. To facilitate the fraud scheme, **MOSES SEEDORF SAID** and his co-conspirators submitted false invoices to the Beck Group for goods and services that were not provided.

9. **MOSES SEEDORF SAID** would and did communicate to his co-conspirators that the Beck Group would pay the false invoices by transferring funds electronically from the Beck Group's bank account to the bank accounts of the shell companies owned by his co-conspirators.

10. **MOSES SEEDORF SAID**, as the construction manager for the Beck Group then approved the false invoices and he caused the Beck Group to issue payments on the false invoices.

11. The Beck Group paid the false invoices using the Automated Clearing House (ACH) payment system provided by its bank, Wells Fargo. The ACH payments transferred monies from the Beck Group's bank account with Wells Fargo

to the bank accounts of the shell companies owned and controlled by Said's co-conspirators.

12. After Said approved the false invoices in Houston, the Beck Group would and did initiate the Wells Fargo Bank ACH payments in Dallas, Texas. The Beck Group's requests for ACH payments were electronically communicated to Wells Fargo's ACH processing center in Minnesota. To complete the processing of requests for ACH payments, the Wells Fargo ACH processing center in Minnesota communicated electronically with the Wells Fargo Bank branch in Dallas, Texas where the Beck Group maintained an account for paying vendors. The Wells Fargo Bank processing center in Minnesota then caused the funds to be transferred from the Beck Group's Wells Fargo bank account in Dallas, Texas, to the bank accounts of the shell companies in Texas, California, and Georgia.

**D.     EXECUTION OF THE SCHEME TO DEFRAUD**

13.    On or about the date set forth below, among other dates, in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**MOSES SEEDORF SAID,**

for the purpose of executing the aforementioned scheme to defraud, did knowingly devise, intend to devise, and participate in a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses,

4

representations and promises, and for the purpose of executing the scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses and representations did cause to be transmitted in interstate commerce, by means of a wire communication, funds from the bank account of the Beck Group in Houston, Texas, into the bank account of IMAC Material Supply Company in California, as listed in Count One as follows:

| COUNT | DATE | TRANSMISSION DESCRIPTION |
|---|---|---|
| One | May 3, 2017 | ACH Transmission in the amount of $306,791.28, from the Wells Fargo bank account of the Beck Group, in Dallas, Texas, to the IMAC Material Supply Company Bank of America in California. |

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO
### (Conspiracy to Commit Money Laundering - 18 U.S.C. § 1956(h))

14. The United States re-alleges Paragraphs 1 through 13 above and incorporates them as if alleged herein.

A. **THE CONSPIRACY AND ITS OBJECT**

15. From in or about 2016 and continuing until 2017, in the Houston Division of the Southern District of Texas and elsewhere, the defendant

5

## MOSES SEEDORF SAID,

and his co-conspirators did knowingly and intentionally conspire, confederate, and agree with each other and with others, known and unknown, to commit the following offenses under Title 18, United States Code, Section 1956, namely:

To knowingly and willfully conduct and attempt to conduct a financial transaction, the activities of which affect interstate commerce with the proceeds of a specified unlawful activity, that is, wire fraud, a violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction, that is funds and monetary instruments, represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

B.  **MANNER AND MEANS OF THE CONSPIRACY**

It was part of the conspiracy that:

16. **MOSES SEEDORF SAID** was hired by the Beck Group as a construction manager in 2016 to oversee the construction of the Le Meridien Hotel located in

6

downtown Houston.

17. As the construction manager for the Le Meridien Hotel, **MOSES SEEDORF SAID** was authorized by the Beck Group to review and approve invoices submitted to the Beck Group for payment by vendors who provided goods or services related to the construction of the Le Meridien Hotel.

18. **MOSES SEEDORF SAID** and his co-conspirators created and registered shell companies in the state of Texas. **MOSES SEEDORF SAID** and his co-conspirators prepared and submitted documents to the Beck Group to become vendors with the Beck Group. **MOSES SEEDORF SAID** and his co-conspirators opened bank accounts to receive payments from the Beck Group as vendors to the Beck Group.

19. To facilitate the fraud scheme, **MOSES SEEDORF SAID** and his co-conspirators submitted false invoices to the Beck Group for goods and services that were not provided.

20. **MOSES SEEDORF SAID** would and did communicate to his co-conspirators that the Beck Group would pay the false invoices by transferring funds electronically from the Beck Group's bank account to the bank accounts of the shell companies owned by his co-conspirators.

21. **MOSES SEEDORF SAID**, as the construction manager for the Beck

Group then approved the false invoices and he caused the Beck Group to issue payments on the false invoices.

22. The Beck Group paid the false invoices using the Automated Clearing House (ACH) payment system provided by its bank, Wells Fargo. The ACH payments transferred monies from the Beck Group's bank account with Wells Fargo to the bank accounts of the shell companies owned and controlled by **MOSES SEEDORF SAID's** co-conspirators.

23. The Beck Group would and did initiate the Wells Fargo Bank ACH payments in Dallas, Texas. The Beck Group's requests for ACH payments were electronically communicated to Wells Fargo's ACH processing center in Minnesota. To complete the processing of requests for ACH payments, the Wells Fargo ACH processing center in Minnesota communicated electronically with the Wells Fargo Bank branch in Dallas, Texas where the Beck Group maintained an account for paying vendors. The Wells Fargo Bank processing center in Minnesota then caused the funds to be transferred from the Beck Group's Wells Fargo bank account in Dallas, Texas, to the bank accounts of the shell companies in Texas, California, and Georgia.

24. The funds were then transferred from the bank accounts of the shell companies, by check, by wire transfer, or by cash to **MOSES SEEDORF SAID**, his

co-conspirators, to other companies, or to persons known and unknown.

In addition to the funds transferred from the bank accounts of the shell companies to **MOSES SEEDORF SAID**, funds were transferred from the bank accounts of the shell companies by wire, checks, and cash to companies and to persons, known and unknown, designed to conceal and disguise the nature, location, source, ownership, and control of the funds.

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE
## (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to defendant,

**MOSES SEEDORF SAID,**

that in the event of conviction of the any of the offenses charged in Count One of this Information, all property, real or personal, which constitutes or is derived from proceeds traceable to such offense, is subject to forfeiture.

## NOTICE OF FORFEITURE
## (18 U.S.C. § 982(a)(1))

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendant,

**MOSES SEEDORF SAID,**

that upon conviction of Count Two of this Information, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States may seek the imposition of a money judgment against the defendant. Defendant is notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture.

RYAN K. PATRICK
United States Attorney

BY: _____
Vernon Lewis
Assistant U. S. Attorney
(713) 567-9505